UNITED STATES BANKRUPTCY COURT

DISTRICT OF IDAHO

| | |
|---|---|
| IN RE:<br><br>INQUIREOF COMPANY,<br><br>    Debtor. | Case No. 21-00185-NGH<br><br>Chapter 7 |
| TIMOTHY R. KURTZ,<br><br>    Plaintiff,<br><br>v.<br><br>APEX LEADERS LLC, and DAVID N. MYERS,<br><br>    Defendants. | Adv. No. 22-06007-NGH |

## MEMORANDUM OF DECISION

Timothy R. Kurtz ("Trustee"), the chapter 7 trustee[1] for the InquireOf Company ("Debtor"), commenced this adversary proceeding asserting claims against defendants David Myers ("Myers") and Apex Leaders LLC ("Apex") for misappropriation of corporate opportunity, breach of fiduciary duty, and intentional interference with a prospective economic advantage. Defendants seek summary judgment on all three

---

[1] Unless otherwise indicated, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101 – 1532, all "Rule" references are to the Federal Rules of Bankruptcy Procedure, Rules 1001 – 9037, and all "Civil Rule" references are to the Federal Rules of Civil Procedure.

MEMORANDUM OF DECISION - 1

claims. Doc. No. 23. In opposing the motion for summary judgment, Trustee filed a motion to extend the time to file the declaration of Blake Hansen. Doc. No. 29. Defendants objected to the extension. Defendants also filed a written objection to the evidence Trustee submitted in opposing the motion for summary judgment. Doc. No. 32. The Court heard oral argument and took the matters under advisement. Doc. No. 35. Having considered the briefing, declarations, and oral arguments, as well as the applicable law, this decision disposes of all pending matters. Fed. R. Bankr. P. 7052; 9014.

**BACKGROUND AND FACTS**

Myers founded Apex in 2009. He is its sole owner. Apex matches private equity investors in need of industry specific advice with industry experts through its proprietary database. Myers describes Apex as providing "white-glove services in the expertise-matchmaking space."

Myers cofounded Debtor with Kyle Sale ("Sale") in 2018. Debtor was incorporated under the laws of Delaware. Myers is a 67% majority shareholder of the Debtor, and he invested $400,000 in the company. Myers also served on Debtor's board of directors. Sale served as CEO. Apex is a minority shareholder of Debtor.

Debtor was formed to provide a self-service online platform designed to pair private equity investors with experts through curated data feeds and algorithmic matching. Debtor's business model was to operate a more cost-effective technology-based alternative to Apex.

MEMORANDUM OF DECISION - 2

In March of 2020, at the onset of the COVID-19 pandemic, Debtor furloughed all of its employees. Debtor did not apply for a loan through the Payroll Protection Program ("PPP"). Neither did Debtor seek additional investment funding from existing investors. On January 8, 2021, Myers and Sale held a meeting with Debtor's investors and notified the investors they were shutting Debtor down. Debtor filed a chapter 7 bankruptcy petition on March 23, 2021.[2]

## ANALYSIS AND DISPOSITION

### A. Motion to Extend

As noted, Trustee requested a one-day extension to file the declaration of Blake Hansen. Doc. No. 29. Local Bankruptcy Rule 7056.1(b)(2) requires a party opposing a motion for summary judgment to file affidavits and other materials at least fourteen days before the hearing date. Trustee argues his counsel diligently attempted to obtain Hansen's declaration from Hansen's counsel, but Hansen did not provide the signed declaration until 8:47 pm on the date Trustee's submissions were due. Trustee was unable to file the declaration that night, so he filed the declaration the next morning.

In exercising its discretion, the Court concludes Trustee has established cause to extend the deadline to file the Hansen declaration. The Court sees no prejudice to Defendants in granting such an extension. Indeed, Defendants were able to file a written

---

[2] These facts are taken from Defendant's Statement of Undisputed Facts supporting summary judgment (Doc. No. 25), Plaintiff's Statement of Disputed Material Facts opposing summary judgment (Doc. No. 28), as well as the Declaration of David N. Myers in Support of Defendants' Motion for Summary Judgment (Doc. No. 23-4), Declaration of Timothy R. Kurtz in Opposition to Defendants' Motion for Summary Judgement (Doc. No. 27-1), and Exhibit D attached to the Declaration of Robert Dean (Doc. No. 27-2).

MEMORANDUM OF DECISION - 3

evidentiary objection to the statements included in the declaration in advance of the summary judgment hearing. *See* Doc. No. 32.[3] Accordingly, the Court will grant Trustee's motion to extend.

    **B.**    **Summary Judgment**

        **1.**    **Standard**

Civil Rule 56(a), applicable here by Bankruptcy Rule 7056, provides that summary judgment is appropriate when there is no genuine dispute as to any material fact, and, when viewing the evidence most favorably to the non-moving party, the movant is entitled to judgment as a matter of law. Bankruptcy Rule 7056; *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986); *Far Out Prods., Inc. v. Oskar*, 247 F.3d 986, 992 (9th Cir. 2001). In resolving a motion for summary judgment, the Court does not weigh the evidence, but rather determines only whether a material factual dispute remains for trial. *Covey v. Hollydale Mobilehome Estates*, 116 F.3d 830, 834 (9th Cir. 1997). An issue of fact is "genuine" if there is sufficient evidence for a reasonable finder of fact to find in favor of the non-moving party, and a fact is "material" if it might affect the outcome of the case. *Far Out Prods.*, 247 F.3d at 992 (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–49 (1986)).

Once the movant has come forward with uncontroverted facts entitling it to relief, the burden shifts to the nonmovant to establish there is a specific and genuine issue of material fact for trial. *Celotex Corp.*, 477 U.S. at 322 n.3. The nonmovant "may not rely

---

[3] The Court will rule on Defendants' objections as they become relevant throughout this Decision.

MEMORANDUM OF DECISION - 4

on denials in the pleadings but must produce specific evidence, through affidavits or admissible discovery materials, to show that the dispute exists." *Barboza v. New Form, Inc. (In re Barboza)*, 545 F.3d 702, 707 (9th Cir. 2008) (citation omitted). Conjecture, surmise or "metaphysical doubt" by the nonmovant of the movant's assertions will not defeat a summary judgment motion. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The nonmovant's evidence must be probative. *Gertsch v. Johnson & Johnson, Fin. Corp. (In re Gertsch)*, 237 B.R. 160, 165 (9th Cir. BAP 1999). If the non-moving party bears the ultimate burden of proof on an element at trial, that party must show the existence of that element to survive a motion for summary judgment. *Celotex Corp.*, 477 U.S. at 322–23.

In deciding whether material factual issues exist, the court must resolve all ambiguities and draw all reasonable inferences against the moving party. *Matsushita Elec. Indus. Co.*, 475 U.S. at 587–88. However, the court is required to do so only in circumstances where a fact specifically averred by the moving party is contradicted by specific evidence submitted in opposition to the motion. *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990). If a motion for summary judgment is properly supported and the nonmovant does not set forth specific facts showing a genuine issue for trial, summary judgment must be entered. Civil Rule 56(a); Rule 7056.

    **2.**    **Choice of Law**

Trustee asserts three claims based on state law for misappropriation of corporate opportunity, breach of fiduciary duty, and intentional interference with prospective economic advantage. Because Debtor is a Delaware corporation that operated in Idaho,

MEMORANDUM OF DECISION - 5

Defendants and Trustee cite to Delaware and Idaho law in their briefing to establish the elements of each claim. While the elements of these claims are similar in both jurisdictions, the Court must decide which state's law applies to the claims alleged.

The Ninth Circuit has held that in bankruptcy "federal choice-of-law rules control which state's law applies." *PNC Bank v. Sterba (In re Sterba)*, 852 F.3d 1175, 1177 (9th Cir. 2017) (citing *Lindsay v. Beneficial Reinsurance Co. (In re Lindsay)*, 59 F.3d 942, 948 (9th Cir. 1995)). Federal choice-of-law follows the Restatement (Second) of Conflict of Laws, to the extent the Restatement is persuasive. *Id*. at 1179 (citing *Flores v. American Seafoods Co.*, 335 F.3d 904, 919 (9th Cir. 2003)). The choice of law analysis regarding the liability of corporate officers and directors differs from tort claims. Trustee alleges two claims based on director liability and one tort claim.

### a. Breach of Fiduciary Duty Claims

Under federal conflict of law analysis, the law of the state of incorporation governs claims involving the liability of corporate officers and directors, including Trustee's claims for misappropriation of corporate opportunity and breach of fiduciary duty. Restatement (Second) of Conflict of Laws §§ 307-309 (1971).[4] Debtor was incorporated in Delaware. Anyone controlling a Delaware corporation is subject to Delaware law on fiduciary obligations to the corporation and other relevant stakeholders. *In re Teleglobe Commc'ns Corp.*, 493 F.3d 345, 386 (3d Cir. 2007) (citing *See In re*

---

[4] Idaho's conflict of law statutes and rules would apply the same analysis. *See* I.C. § 30-21-501 (providing that the law of the jurisdiction of formation of an entity governs the internal affairs of the entity).

MEMORANDUM OF DECISION - 6

*Topps Co. S'holders Litig.,* 924 A.2d 951, 960 (Del. Ch. 2007)). Accordingly, Trustee's claims for misappropriation of corporate opportunity and breach of fiduciary duty are governed by Delaware law.

### b. Tort Claim

Federal conflict of law analysis employs the Second Restatement's most significant relationship test when determining which jurisdiction's laws govern tort claims, including Trustee's claim for intentional interference with prospective economic advantage. *Sterba*, 852 F.3d at 1179.[5]

The Court must determine "the state which, with respect to that issue, has the most significant relationship to the occurrence and the parties," as determined by the place of the conduct and injury, the domicile or residence of the parties, and the place where the parties' relationship is centered. Restatement (Second) Conflict of Laws § 145 (1971). The Court must also apply the principles in § 6, including the needs of interstate systems, the relevant policies of the forum and other interested states, the protection of justified expectations, the policies underlying the relevant field of law, certainty, predictability, uniformity of result, and ease in determination and application.

At the time of the alleged interference, all parties were located in Idaho. Debtor operated in Idaho. Apex is an Idaho limited liability company that operates in Idaho. Myers resides in Idaho. Moreover, the alleged interference took place in Idaho. None of

---

[5] Case law indicates Idaho would apply the same standard. *See Seubert Excavators, Inc. v. Anderson Logging Co.*, 889 P.2d 82, 85 (Idaho 1995) (stating "[a]lthough never adopted in full, this Court has opted in favor of applying the most significant relationship test set forth in the Restatement (Second) of Conflict of Laws[.]").

MEMORANDUM OF DECISION - 7

Trustee's allegations relating to this claim implicate Delaware property or people who were Delaware citizens. Thus, Idaho has the most significant relationship to the occurrence and parties and the Court will apply Idaho law to Trustee's tort claim for intentional interference with prospective economic advantage.

### 3. Fiduciary Claims Analysis

#### a. Existence of Fiduciary Duty

The Court first considers whether Apex owed a fiduciary duty to Debtor. Apex argues that as a minority shareholder, it owed no fiduciary duty to Debtor, and thus, could neither breach such a duty nor misappropriate a corporate opportunity. Delaware law establishes that "a controlling stockholder owes fiduciary duties to the corporation and its minority stockholders, and it is 'prohibited from exercising corporate power (either formally as directors or officers or informally through control over officers and directors) so as to advantage [itself] while disadvantaging the corporation.'" *Carr v. New Enter. Assocs.,* 2018 WL 1472336, at *22 (Del. Ch. Mar. 26, 2018) (quoting *Thorpe v. CERBCO, Inc.* 478954, at *8 (Del. Ch. Aug. 9, 1995)); *Delman v. GigAcquisitions3, LLC*, 288 A.3d 692, 712 (Del. Ch. 2023). Thus Myers, as a controlling stockholder with more than 50% of the voting power in Debtor, owed a fiduciary duty to it and its minority stockholders. However, unlike Myers, Apex did not own a controlling stock interest in Debtor.

To establish that Apex owed Debtor a fiduciary duty as a minority shareholder, Trustee relies on Delaware caselaw determining that:

MEMORANDUM OF DECISION - 8

> a number of shareholders, each of whom individually cannot exert control over the corporation (either through majority ownership or significant voting power coupled with formidable managerial power), can collectively form a control group where those shareholders are connected in some legally significant way—e.g., by contract, common ownership, agreement, or other arrangement—to work together toward a shared goal.

*Dubroff v. Wren Holdings, LLC*, 2009 WL 1478697, at *3 (Del. Ch. May 22, 2009). The facts of this case, however, are distinguishable from the *Dubroff* case. Myers did not need to include Apex in a control group in order to dominate Debtor's actions. Myers was a director and majority stockholder of Debtor. The *Dubroff* case, on the other hand, contemplates a control group made up of shareholders that cannot individually exert control over a corporation. Thus, Trustee has not adequately explained why Apex should be held to be part of a control group with Myers, when Myers could assert control over Debtor without the use of a control group. Nor did Trustee demonstrate that Apex, acting as a shareholder, voted its shares in a way to control Debtor. Therefore, the Court declines to conclude Apex, in its capacity as a minority shareholder of Debtor, owed Debtor a fiduciary duty.

Because the Court concludes that Apex, as a minority shareholder, does not owe fiduciary duties to the corporation, the Court will grant summary judgment in favor of Apex on Trustee's fiduciary claims for misappropriation of a corporate opportunity and breach of fiduciary duty.

### b.     Misappropriation of Corporate Opportunity

Trustee asserts that Myers misappropriated Debtor's corporate opportunity by abruptly furloughing Debtor's employees at the start of the pandemic, shuttering the

business, and then, through Apex, proceeding to build an online technology platform with the same business purpose as Debtor.  Trustee argues that Myers has capitalized on the exact business opportunity Debtor was pursuing.  According to Trustee, Myers exercised Debtor's corporate power to the advantage of Myers and his competing business Apex, and to the detriment of Debtor.  Myers, however, denies that Apex has built an online technology platform with the same business purpose as Debtor.  Doc. No. 23-4 at ¶ 15.

A corporate fiduciary agrees to place the interests of the corporation before their own in appropriate circumstances.  *Broz v. Cellular Info. Sys., Inc.*, 673 A.2d 148, 154 (Del. 1996).  A corporate fiduciary may not appropriate for themselves an opportunity that should belong to the corporation.  *Id*. at 155.  The Court considers the following factors in determining a claim for misappropriation of corporate opportunity: (1) whether the corporation was financially able to exploit the opportunity; (2) whether the opportunity was within the corporation's line of business; (3) whether the corporation had an interest or expectancy in the opportunity; and (4) by taking the opportunity for their own, the corporate fiduciary was placed in a position inimical to his duties to the corporation. *Broz*, 673 A.2d at 154–55.  No one factor is dispositive, and all applicable factors must be considered.  *Id*. at 155.

Myers argues that Trustee has not established a genuine issue of material fact regarding the first and second factors because Myers and Apex are not pursuing the same business opportunity Debtor pursued and even if it has, Debtor was not financially able to exploit that business opportunity.  Thus, Myers focuses on two factors, yet adjudication of this claim requires the Court to consider all four factors as no one factor is dispositive.

MEMORANDUM OF DECISION - 10

At the summary judgment phase, the Court cannot weigh the evidence in favor of Myers, and to resolve Trustee's claim for misappropriation of corporate opportunity, the Court must evaluate and weigh the evidence relevant to all four factors.

Because the Court concludes it cannot adjudicate this claim without weighing evidence and concluding which of the factors to weigh and consider, the Court must deny summary judgment as to Trustee's claim for misappropriation of a corporate opportunity.

### c. Breach of Fiduciary Duty

As noted, Trustee asserts Myers breached his fiduciary duties to Debtor. It is well established that directors owe fiduciary obligations to the corporation and its shareholders. *N. Am. Cath. Educ. Programming Found., Inc. v. Gheewalla*, 930 A.2d 92, 99 (Del. 2007) (citing *Guth v. Loft*, 5 A.2d 503, 510 (Del. 1939); *Malone v. Brincat*, 722 A.2d 5, 10 (Del. 1998)). More specifically, the Delaware Supreme Court has held that directors and officers of a Delaware corporation owe the corporation and its shareholders a "triad" of duties. *Malone*, 722 A.2d at 10. This triad is composed of the duty of care, the duty of loyalty, and the duty to act in good faith. *Id*. The Delaware Supreme Court stated that this "triparte fiduciary duty does not operate intermittently but is the constant compass by which all director actions for the corporation and interactions with its shareholders must be guided." *Id*.

### i. Duty of Care

Trustee's Statement of Disputed Material Facts generally alleges that Myers breached his duty of care when he caused Debtor to neither apply for a PPP loan nor solicit additional funding from existing investors. Doc. No. 28 at 5. Trustee's opposition

MEMORANDUM OF DECISION - 11

only discusses the duty of care in one instance, which is a citation to a law review article: Jens Dammann, *The Controlling Shareholder's General Duty of Care: A Dogma that Should Be Abandoned*, 2015 U. Ill. L. Rev. 479, 483. *See* Doc. No. 27 at 7. Despite Trustee's failure to expressly analyze the legal elements of a claim for breach of the duty of care, the Court has considered the requisites of such a claim and concludes Trustee has demonstrated a genuine issue of material fact in one instance.

A plaintiff cannot prove a breach of the duty of care without a showing of gross negligence. *Cargill, Inc. v. JWH Special Circumstance LLC,* 959 A.2d 1096, 1113 (Del. Ch. 2008). The exact behavior that will constitute gross negligence varies based on the situation, but generally requires directors and officers to fail to inform themselves fully and in a deliberate manner. *In re Fedders N. Am., Inc.*, 405 B.R. 527, 539 (Bankr. D. Del. 2009).

Trustee's argument that Myers breached his fiduciary duty of care is based on three assertions. Trustee first asserts Myers breached his fiduciary duty of care by choosing not to cause Debtor to apply for a PPP loan. Myers counters, however, that Debtor was not eligible for a PPP loan. Doc. No. 23-3 at ¶ 6; Doc. No. 23-4 at ¶ 12.

Trustee does not assert that Myers failed to inform himself fully and in a deliberate manner of the eligibility requirements of PPP loans. Further, Trustee has failed to come forward with specific evidence to show a dispute exists as to whether Debtor was eligible for a PPP loan. Trustee's assertion that Debtor qualified for a PPP loan is based on the opinions of several of its investors. *See* Doc. No. 28 (Plaintiff's Statement of Disputed Material Facts) at ¶ 3(c) (stating "[s]everal knowledgeable and experienced investors in

MEMORANDUM OF DECISION - 12

[Debtor] have testified that they believe [Debtor] would have qualified for a PPP loan or know of no reason why it would not." (citing Doc. No. 27-2 ¶ 9; Doc. No. 27-3, Ex. A, 15:20 – 16:10)).  These statements are conclusory and amount to no more than conjecture.  Accordingly, the Court will grant summary judgment in favor of Myers regarding whether Myers breached the duty of care when he caused Debtor not to apply for a PPP loan.

Second, Trustee asserts Myers breached the fiduciary duty of care by choosing not to seek additional funding from investors.  Trustee argues Debtor never asked existing investors to invest additional funds before furloughing employees.  Doc. No. 28 at ¶ 3(h).  Viewing this evidence in the light most favorable to Trustee, the Court concludes that Trustee has raised a genuine issue of material fact whether Myers informed himself fully and in a deliberate manner whether there was sufficient additional funding available from existing investors to allow Debtor to continue operating.  Accordingly, the Court will deny summary judgment on the issue of whether Myers breached his duty of care in causing Debtor not to request additional funding from existing investors.

Finally, Trustee asserts that Myers breached his fiduciary duty to Debtor by delaying the decision to shut down Debtor until January 2021, when its employees were furloughed in March of 2020.  Trustee argues this delay damaged Debtor's value as a going concern by making it less attractive to potential new investors.  Doc. No. 28 at ¶ 4(a).  Trustee does not specify whether this constitutes a breach of Myers' fiduciary duty of care, good faith, or loyalty.  Neither does Trustee's Memorandum in Opposition to Defendants' Motion for Summary Judgment set forth the legal elements associated

MEMORANDUM OF DECISION - 13

with this claim. Therefore, the Court is left to guess the type of fiduciary duty allegedly breached. Logically, this appears to be a breach of the fiduciary duty of care.

Trustee's evidence for this claim rests on the declaration of investor Robert Dean, which states, "[b]ased upon my background and experience, including my experience in valuing and operating portfolio companies, the unexplained delay between the time [Debtor's] employees were furloughed and the decision to shut the company down announced in January of 2021 severely damaged the value of [Debtor] as a going concern, and certainly made it less attractive to potential new investors." Doc. No. 27-2 at ¶ 17.[6]

Dean's testimony is problematic for two reasons. First, his testimony does not rise above mere conjecture. Dean does not suggest he actually valued Debtor as a going concern immediately before and after Debtor furloughed its employees. He therefore lacks actual knowledge whether Debtor's value as a going concern declined. Second, to the extent Trustee seeks to establish that Dean is an expert witness, Trustee has failed to establish that Dean's opinion is admissible because the methodology used to reach that opinion did not meet the *Kumho Tire* standards. *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 148 (1999). An expert witness relying solely or primarily on experience must explain how that experience leads to the conclusion reached and why that experience is a sufficient basis for the opinion, and how that experience is reliably

---

[6] Defendants object to this testimony on grounds of foundation, speculation, and hearsay. While the Court will sustain this objection, even considering this testimony as admissible, Trustee has failed to raise a genuine issue of material fact.

MEMORANDUM OF DECISION - 14

applied to the facts. *In re Smitty Inv. Grp., LLC*, 2008 WL 2095523, at *9 (Bankr. D. Idaho May 16, 2008). Here, Trustee did not show that Dean was qualified to opine on the value of Debtor as a going concern because Dean failed to explain his methodology and approach to valuing the company. Accordingly, the Court will grant summary judgment in favor of Myers regarding the timing of the decision to shut down Debtor's business.

### ii.    Duty of Good Faith

Trustee does not adequately oppose Myers' request for summary judgment regarding breach of the fiduciary duty of good faith. Trustee's opposition makes only one reference to "good faith," and there, only in the context of generally discussing Idaho law. *See* Doc. No. 27 at 5 (stating "[a]s a threshold matter, the existence of a fiduciary relationship 'does not depend upon some technical relation created by or defined in law, but it exists in cases where there has been a special confidence imposed in another who, in equity and good conscience, is bound to act in good faith and with due regard to the interest of one reposing the confidence. *Stearns v. Williams*, 72 Idaho 276, 288, 240 P.2d 833, 840–41 (1952). Trustee provides no analysis under Delaware law concerning the legal elements of a claim for the breach of the duty of good faith and fails to raise a genuine issue of material fact regarding any element of this claim. Accordingly, the Court will grant summary judgment in favor of Myers on the issue of whether Myers breached his duty of good faith to the Debtor.

### iii.    Duty of Loyalty

The duty of loyalty "mandates that the best interest of the corporation and its shareholders takes precedence over any interest possessed by a director, officer or

MEMORANDUM OF DECISION - 15

controlling shareholder and not shared by the stockholders generally." *Cede & Co. v. Technicolor, Inc.*, 634 A.2d 345, 361 (Del. 1993), decision modified on reargument, 636 A.2d 956 (Del. 1994). "Classic examples of director self-interest in a business transaction involve either a director appearing on both sides of a transaction or a director receiving a personal benefit from a transaction not received by the shareholders generally." *Id*. at 362. Trustee asserts Myers breached his duty of loyalty to the Debtor in two regards.

First, Trustee argues that Myers breached his duty of loyalty to Debtor when he caused Debtor to abruptly furlough its employees and not apply for a PPP loan. Trustee asserts Myers did not want Debtor to apply for a PPP loan because it would jeopardize Apex's ability to obtain such a loan. Doc. No. 28 at ¶ 3(f). This, however, misconstrues Defendants' explanation for why Debtor did not apply for a PPP loan. The record does not demonstrate that Apex's eligibility for a PPP loan would have been negatively impacted should Debtor have submitted its own PPP loan application, only that Apex's eligibility for a PPP loan may have been negatively impacted if it included Debtor in Apex's loan application. The difference is significant.

Debtor held an "All-Hand Investor Meeting" on January 8, 2021. Doc. No. 30 at ¶ 14. Myers, Sale, and many investors attended the meeting. *Id*. at Ex. B.[7] Sale specifically addressed an investor's question at that meeting whether Debtor pursued a PPP loan. *Id*., Ex. B. at ¶ 10-11. Sale explained that Debtor was not able to apply for a

---

[7] Defendants object to Exhibit B attached to Blake Hansen's declaration on grounds of foundation, speculation, and hearsay. The Court will overrule the objections.

MEMORANDUM OF DECISION - 16

PPP loan due to the eligibility requirements. As an alternative, Debtor explored whether it "could wrap into the Apex application." *Id.* at ¶ 11. Sale, indicated, however, this would have created "a significant accounting problem, which could have materially hurt Apex's chances of being awarded a loan." *Id.* In other words, Debtor explored whether it could be included in the Apex PPP loan application to solve Debtor's eligibility problem. Debtor was unable to pursue this solution because it could have harmed Apex's ability to obtain its own PPP loan. Accordingly, the Court will grant summary judgment in favor of Myers regarding whether Myers breached his fiduciary duty of loyalty when Debtor did not apply for a PPP loan.

Next, Trustee asserts that Myers breached his fiduciary duty of loyalty to Debtor when he took Debtor's intellectual property assets for use at Apex. Myers denies taking any of Debtor's property. Doc. No. 23-4 at ¶¶ 14-15. Trustee relies on two pieces of evidence that contradict Myers' denial. First, investor Robert Dean testified via declaration that "[i]n December of 2020 and early January of 2021, I had several conversations with Dave Myers during which Mr. Myers stated his intention to simply take the electronic platform developed by [Debtor] and related assets, and to use them in his competing company, Apex Leaders." Doc. No. 27-2 at ¶ 14. Second, investor Roger Meriam testified during a deposition that Myers told Meriam that Myers had taken code from Debtor. Doc. No. 27-3, Ex. B, 23:3-12.[8] Meriam also concedes in that deposition

---

[8] Defendants object to the admissibility of the testimony on grounds of the rule of completeness, relevance, foundation, speculation, and hearsay. The Court overrules each objection.

MEMORANDUM OF DECISION - 17

he does not know if Myers actually took Debtor's intellectual property. *Id*. at 23:13-20.[9] Given the conflicting accounts, Trustee has raised a genuine issue of material fact regarding this issue that will require the Court to weigh evidence and assess credibility. Accordingly, the Court will deny summary judgment regarding this issue.

### 4. Tort Claim Analysis

To establish a claim for intentional interference with a prospective economic advantage, Trustee must show:

> (1) the existence of a valid economic expectancy, (2) knowledge of the expectancy on the part of the interferer, (3) intentional interference inducing termination of the expectancy, (4) the interference was wrong by some measure beyond the fact of the interference itself, and (5) resulting damage to the plaintiff whose expectancy has been disrupted.

*JB Constr., Inc., v. King (In re King)*, 403 B.R. 86, 94 (Bankr. D. Idaho 2009) (quoting *Cantwell v. City of Boise*, 191 P.3d 205, 216 (Idaho 2008)). To be actionable, the interference must be undertaken by the defendant for an improper purpose or by an improper means. *Highland Enter., Inc. v. Barker*, 986 P.2d 996, 1004 (Idaho 1999). Violation of an agent's fiduciary duty may support a claim for interference with prospective economic advantage. *Wesco Autobody Supply, Inc. v. Ernest*, 243 P.3d 1069, 1082 (Idaho 2010). The interference must come from someone who was a third party to the expected economic relationship. *Am. Semiconductor., Inc. v. Sage Silicon Sols., LLC*, 395 P.3d 338, 342 (Idaho 2017). The actions of an agent are usually the actions of the corporation. *Ostrander v. Farm Bureau Mut. Ins. Co. of Idaho*, 851 P.2d 946, 950 (Idaho

---

[9] Defendants object to the admissibility of the testimony on grounds of the rule of completeness, relevance, foundation, speculation, and hearsay. The Court overrules each objection.

MEMORANDUM OF DECISION - 18

1993). An agent, however, is liable for actions that are outside the agent's scope of duty to the corporation. *Id*.

The Court has considered all submissions and concludes there are genuine issues of material fact that preclude a grant of summary judgment on this claim. The Court will deny summary judgment regarding Trustee's claim for intentional interference with a prospective economic advantage.

**CONCLUSION**

The Court will grant Trustee's motion to extend the deadline to file the declaration of Blake Hansen by one day. The Court will grant summary judgment in favor of Apex on Trustee's fiduciary claims for misappropriation of a corporate opportunity and breach of fiduciary duty. The Court will grant summary judgment in favor of Myers regarding (1) whether Myers breached the duty of care when he caused Debtor not to apply for a PPP loan; (2) whether Myers breached the duty of care regarding the timing of the decision to shut down Debtor's business; (3) whether Myers breached his duty of good faith to the Debtor; and (4) whether Myers breached his fiduciary duty of loyalty when Debtor did not apply for a PPP loan. The remaining requests for summary judgment will be denied. Counsel for Defendants shall submit an order consistent with this decision.

DATED: August 24, 2023



_____
NOAH G. HILLEN
U.S. Bankruptcy Judge

MEMORANDUM OF DECISION - 19